PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-3290

UNITED STATES OF AMERICA

Appellant

v.

RALPH DOUGLAS TRACEY

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 1-08-cr-00126-1)
District Judge: Honorable William W. Caldwell

Argued September 29, 2009

Before: RENDELL and AMBRO, <u>Circuit Judges</u>
and McVERRY,[*] <u>District Judge</u>

_____

[*]Honorable Terrence F. McVerry, United States District
Judge for the Western District of Pennsylvania, sitting by
designation.

(Opinion filed   March 1, 2010 )

Martin C. Carlson
   United States Attorney
Theodore B. Smith, III (Argued)
Gordon A.D. Zubrod
   Assistant United States Attorney
Criminal Appeals
Office of the United States Attorney
228 Walnut Street,
P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA   17108-0000

     Counsel for Appellant

Steve Rice, Esquire (Argued)
18 Carlisle Street, Suite 215
Gettysburg, PA   17325

     Counsel for Appellee

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

The United States Government appeals the order of the

District Court suppressing evidence seized and a statement made during a search conducted pursuant to a warrant. The Court held that the warrant was general and not cured by the affidavit of probable cause because it was not incorporated into the warrant. The Court also concluded that a reasonably objective police officer would have recognized that the warrant was defective, and thus the good faith exception to the exclusionary rule did not apply. On appeal, the Government argues that the warrant was not general because it incorporated the narrower affidavit, that the search was limited to the scope of that affidavit, and that, in any event, the good faith exception applies to the circumstances of this case.

Relying on our decision in *Doe v. Groody*, 361 F.3d 232 (3d Cir. 2004), we conclude that the warrant did not incorporate the affidavit of probable cause, and thus the narrower affidavit did not cure the concededly overbroad warrant. We also conclude that the Government waived any arguments based on the exception to the incorporation rule applied in *United States v. Leveto*, 540 F.3d 200 (3d Cir. 2008), *cert. denied*, 129 S. Ct. 2790 (2009), by failing to raise them before the District Court. However, we hold that application of the exclusionary rule is not justified because the officers acted in good faith by relying on the validity of the warrant. Accordingly, we reverse the District Court's order suppressing the evidence seized as a result of the search and the statement made during the search, and remand for further proceedings.

3

I. Factual and Procedural Background

After conducting an investigation into the Internet distribution of a video containing images of an adult male having vaginal sex with a minor female, the Chief of the Liberty Township Police Department, James Holler, presented an application for a search warrant to a Magistrate Judge in Adams County, Pennsylvania.[1]  Holler prepared the application for the warrant and a seven-page affidavit of probable cause that accompanied the application.[2]  He used a standard form issued by the Administrative Office of Pennsylvania Courts that was titled "Application For Search Warrant And Authorization." The form included the application and warrant on a single page divided into several sections.  Under the block titled "Identify Items To Be Searched For And Seized," which directs applicants to "be as specific as possible," Holler wrote:

> Any items, images, or visual depictions

---

[1] Charges against Tracey were initially filed in the Court of Common Pleas of Adams County, Pennsylvania.  Before state prosecution was terminated in favor of federal prosecution, the Court of Common Pleas Judge held preliminary and pretrial hearings and denied the motion to suppress Tracey filed in that Court.  In its opinion, the District Court relied on the state court's factual findings and therefore did not hold an evidentiary hearing.

[2] Both documents are appended to this opinion.

4

representing the possible exploitation of children including video tapes or photographs.

COMPUTERS: Computer input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media.

In the block requiring a "Specific Description Of Premises And/Or Person To Be Searched," Holler included an address and a detailed description of two buildings located at that address. He listed Ralph Douglas Tracey, the defendant, as the owner or occupant of the premises to be searched.

The box below the name of the owner of the premises was divided into four partitions. The first and second partitions asked for "Violation of" and the "Date(s) of Violation." Holler wrote "6312(c),(d) PA Crimes Code"[3] and listed the date of the

_____

[3] When the warrant was issued, 18 Pa. Cons. Stat. Ann. § 6312 stated in relevant part:
(c) Dissemination of photographs, videotapes, computer depictions and films.–
(1) Any person who knowingly sells, distributes, delivers, disseminates, transfers, displays or exhibits to others, or who possesses for the purpose of sale, distribution, delivery,

violation as January 9, 2006. Another portion of this box provided three small boxes for an applicant to check. Holler checked all three, indicating that: 1) the warrant application had been approved by the district attorney; 2) additional pages, other than the affidavit of probable cause, were attached; and 3) the affidavit of probable cause was attached. The box pertaining to the probable cause affidavit stated "Probable Cause Affidavit(s) MUST be attached (unless sealed below)." [A 34] It was

---

dissemination, transfer, display or exhibition to others, any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.
(d) Possession of child pornography.–
(1) Any person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense. 18 Pa. Cons. Stat. Ann. § 6312 (amended 2009).

A "prohibited sexual act" was defined as "sexual intercourse . . . , masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." *Id.* The statute was amended during the pendency of the appeal, *see* H.B. 89, 193rd Gen. Assem., Reg. Sess. (Pa. 2009), but the amendments are not material to this case.

6

followed by a sentence requesting that the applicant identify the total number of pages. Holler handwrote "7" in response to this inquiry. Underneath this section, he signed the form, indicating that he swore there was probable cause to believe that "certain property" was evidence of a crime and was located at the "particular premises" described above. In a separate box below Holler's signature, the Magistrate Judge signed and attached a seal, indicating that the affidavit had been sworn before him on January 30, 2006.

On the same page as the application, and immediately below the box containing the Magistrate Judge's signature, there is a final box, titled "Search Warrant," containing the following language:

> WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto, from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

The Magistrate Judge indicated when the warrant could be served. Below the date and time, the Magistrate Judge signed the warrant and attached a seal. The seven-page affidavit of probable cause was attached to the application and the warrant, and the bottom of each page of the affidavit included the

signature of Holler and the date, along with the signature of the Magistrate Judge, the seal, and the date.

The affidavit of probable cause provided detailed information on the investigation of Tracey. According to the affidavit, an officer was investigating the distribution of child pornography on the Internet by using software to recognize and match files known to contain child pornography. The officer found a file name that matched a known movie file. The affidavit included the digital signature of the file and stated that this file was a video of an adult male having vaginal sex with a minor female.

The officer downloaded the movie file and confirmed its contents. The officer then determined the Internet Protocol ("IP") address of the computer distributing the film and sought a court order directing Adelphia, the internet service provider, to provide subscriber information for the IP address along with connection-access logs. Adelphia responded that the account of the IP address was registered to Doug Tracey of Fairfield, Pennsylvania. The Liberty Township Police Department then became involved in the investigation. After confirming the Adelphia account information, Holler visited the address listed on the Adelphia account and observed a house with an attached body shop.

The affidavit also included information about the items the officers expected to seize during the search. On page two of

the affidavit, Holler stated that he expected to find "within the residence of 2896 Tract Road, Liberty Township, Adams County, PA 17320, items which are/were used to commit the crime of Sexual Abuse of Children, to wit, 18 PA. C.S.A. section 6312(c), (d)." He further stated:

> Your affiant has delineated the items your affiant expects to find within said location which is captioned under "items to be searched for and seized" and your affiant incorporates that list therein. Possession of these items are either in and of themselves a crime or they are/were utilized to commit a crime, to wit, Sexual [A]buse of [C]hildren, 18 PA. C.S.A. section 6312(c), (d).

Additionally, in a section of the affidavit titled "Seizure of Computers and Digital Evidence," the affidavit described the sort of evidence likely to be associated with crimes involving child pornography, including floppy disks, hard drives, tapes, DVDs, and CD-ROMs, and explained why it was necessary to seize these items and search them offsite. The search also was expected to produce items that showed ownership or use of the computers and ownership of the home.

Holler and three other officers served the warrant on the day it was issued. During the search, Holler explained the search warrant to Tracey and his wife, informing them that he was searching for child pornography. Tracey allegedly told

9

Holler that he may have accidentally downloaded one movie containing child pornography. After a search of the defendant's home and the shop adjoining his home, the officers seized: one working laptop computer, one broken laptop computer, two floppy disks, two computer towers with power cords, one Sony video cassette, four other videotapes, one box of 19 video cassette tapes, and one bag of 19 videotapes. After examining one of the computer towers, officers removed 208 images and 48 movies allegedly containing child pornography. The Commonwealth filed charges against Tracey in state court based on 189 images and 33 movies that it alleged contained child pornography.

State prosecution was then terminated in favor of federal prosecution. A federal grand jury in the Middle District of Pennsylvania returned a two-count indictment charging Tracey with receiving and distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Tracey entered a plea of not guilty and was released subject to conditions.

Tracey then filed a motion to suppress, arguing that the evidence seized pursuant to the search warrant must be suppressed because the warrant lacked the particularity required by the Fourth Amendment. He also asked that his statement during the search be suppressed as fruits of this illegal search. The Government opposed the motion. The District Court

granted the motion to suppress, and the Government filed a timely appeal.

## II. Discussion

The District Court had subject matter jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 18 U.S.C. § 3731.

We review the District Court's decision to grant a motion to suppress under a mixed standard of review. *See United States v. Crandell*, 554 F.3d 79, 83 (3d Cir. 2009). We review its findings of fact for clear error, but exercise plenary review over its legal conclusions. *See id.*[4]

*A. Did the Warrant Incorporate the Affidavit of Probable Cause?*

Before the District Court, the Government conceded that the description of the items to be searched for and seized in the application (and therefore the warrant) lacked the particularity

---

[4] Tracey does not contend that a different standard of review applies to the District Court's factual determinations because that Court relied on the state court's findings of fact instead of holding an evidentiary hearing, *cf. United States v. Wilson*, 413 F.3d 382, 385–86 (3d Cir. 2005), and, in any case, the District Court's factual findings are undisputed.

required by the Fourth Amendment unless the affidavit of probable cause was incorporated. On appeal, it contends that Holler did everything he could to incorporate the affidavit into the warrant within the confines of the form and that the standard language on the warrant explicitly incorporated the affidavit. Tracey responds that Holler failed to incorporate the affidavit of probable cause into the warrant, and thus the affidavit does not cure the warrant's lack of particularity.

The Fourth Amendment to the Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It directs that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." *Id.* "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927). Along with preventing general searches, the particularity requirement serves two other functions. It "memorializes precisely what search or seizure the issuing magistrate intended to permit," *Groody*, 361 F.3d at 239, and informs the subject of the search "of the lawful authority of the executing officer, his need to search, and the limits of his power to search," *Groh v. Ramirez*, 540 U.S. 551, 561 (2004) (*quoting*

12

*United States v. Chadwick*, 433 U.S. 1, 9 (1977)).[5]

Along with other Courts of Appeals, we have held that an affidavit may be used in determining the scope of a warrant that lacks particularity if the warrant is "accompanied by an affidavit that is incorporated by reference." *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir. 1982); *see also Groh*, 540 U.S. at 557–58 ("[M]ost Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."). "[T]o take advantage of this principle of interpretation, the warrant must expressly incorporate the affidavit," and the incorporation must be "clear." *Groody*, 361 F.3d at 239; *see also Bartholomew v. Pennsylvania*, 221 F.3d 425, 428–29 & n.4 (3d Cir. 2000). As with the particularity requirement, the primary purposes of this incorporation rule are to "limit the [officers'] discretion as to what they are entitled to seize" and "inform the subject of the search what can be seized." *Bartholomew*, 221 F.3d at 429.

The issue, then, is whether the warrant incorporated the affidavit. We are guided in this regard by *Doe v. Groody*.

---

[5] Of course, the Fourth Amendment does not require the officer to provide a copy of the warrant to the subject before he conducts the search. *See United States v. Grubbs*, 547 U.S. 90, 98–99 (2006); *Groh*, 540 U.S. at 562 n.5.

13

There, a mother and daughter brought a § 1983 action against officers who searched them during a search of their home. 361 F.3d at 236–37. Although the officers searched pursuant to a warrant, the face of the warrant only authorized the officers to search the home and the male resident of the home. *Id.* at 236, 239. The officers, recognizing that the face of the warrant did not authorize them to search the females, argued that the scope of the warrant should be construed with reference to the accompanying affidavit, which did request permission to search all occupants of the house. *Id*. at 239.

We held that the warrant had not "expressly incorporate[d]" the affidavit so as to permit this construction of the warrant. *Id.* The warrant specifically referred to the affidavit in response to the questions about the date of the violation and the supporting probable cause, but did not mention the affidavit in response to the question concerning the premises or people to be searched. *Id.* at 239. That the affidavit was expressly referenced in certain sections "demonstrate[d] that where the face sheet was intended to incorporate the affidavit, it said so explicitly." *Id.* Thus, "the absence of a reference to the affidavit" in the section describing the premises and persons to be searched "negat[ed] any incorporation of that affidavit." *Id.* at 240.

In contrast, we have held that including the statement "see Exhibit A sealed by Order of the Court" in the items-to-be-seized section of the warrant incorporated that exhibit

14

containing a list of items to be seized. *See Bartholomew*, 221 F.3d at 429; *see also Bartholomew v. Pennsylvania*, No. 97-5684, 1999 WL 415406, at \*1 (E.D. Pa. June 23, 1999), *rev'd*, 221 F.3d 425.[6] Similarly, we held an affidavit was incorporated where the warrant "direct[ed] the police officers to search the defendant's premises 'for . . . evidence which is specified in the annexed affidavit.'" *United States v. Johnson*, 690 F.2d at 64.[7]

Other Courts of Appeals have accepted phrases such as "attached affidavit which is incorporated herein," "see attached affidavit," and "described in the affidavit," as suitable words of incorporation. *See, e.g.*, *United States v. Waker*, 534 F.3d 168, 172 n.2 (2d Cir. 2008); *United States v. McGrew*, 122 F.3d 847, 849 (9th Cir. 1997); *United States v. Curry*, 911 F.2d 72, 76–77 (8th Cir. 1990).

---

[6] However, because Exhibit A was sealed, the Court concluded that it could not be used to construe the scope of the warrant. *See id.* at 429–30. In that context, the warrant lacked the particularity required by the Fourth Amendment. *See id.*

[7] We have required incorporation to be explicit when officers seek to use the affidavit either to broaden the warrant or to narrow it. *See Groody*, 361 F.3d at 239–40 (broadening); *Johnson*, 690 F.2d at 64–66 (narrowing). We have not indicated that there would be reason to apply a less exacting standard when the officers seek to use the affidavit to narrow the scope of the warrant.

Here, we agree with the District Court—albeit for different reasons—that the warrant did not adequately incorporate the affidavit of probable cause. The face sheet of the application and the warrant do not contain any explicit words of incorporation. More importantly, the description of the items to be searched for and seized does not incorporate the affidavit. The first reference to the affidavit on the application and warrant requires that the affidavit be attached to the application and asks for the total number of pages. The box is checked and "7" is handwritten in the blank. However, these markings do not suggest that the description of the items to be seized is to be read in conjunction with the affidavit. The second reference appears in the Search Warrant section of the form, where preprinted words state that the Magistrate Judge has found probable cause from the "facts [that] have been sworn to or affirmed before me by written affidavit(s) attached hereto." Again, this statement gives no indication that the items-to-be-seized section is to be read with reference to the affidavit. *See Groh*, 540 U.S. at 555 (rejecting a similar statement as insufficient to incorporate the application or affidavit of probable cause into the warrant); *see also Curry*, 911 F.2d at 76–77 (finding the following language insufficient to incorporate the affidavit: "Whereas, the application and supporting affidavit of Det. Ross Swanson [were] duly presented and read by the Court, and being fully advised in the premises . . . ."). Thus the only two references to the affidavit fail to incorporate expressly the affidavit into the warrant's description of the items to be searched for and seized if found.

16

The Government argues that Holler did all he could to incorporate the affidavit by checking the box, writing in the number of pages, attaching it to the application and warrant, and signing below the preprinted language. But if Holler intended to incorporate the affidavit into the description of items to be seized, he could have written "see affidavit," "as further described in the affidavit," or any other words of incorporation. This requirement is not difficult, yet it went unmet in this case.

The Government's other arguments regarding incorporation are unpersuasive. It correctly argues that this case is distinguishable from *Groh* because the warrant there contained no words of incorporation and neither the application nor the affidavit accompanied the warrant. 540 U.S. at 557–58. But this argument does not help the Government — our Court requires clear words of incorporation to cure a warrant lacking particularity.

The Government also contends that the District Court failed to recognize that the application and warrant are one document pursuant to the Pennsylvania Rules of Criminal Procedure. The Government argues that, under Pennsylvania practice, the description of the items to be seized is to be listed in the affidavit, not the application, and the affidavit must be served with the warrant. *See* Pa. R. Crim. P. 205 and 206. It posits that this practice serves the purpose of the incorporation rule by providing the agents and the subject with notice of the limits of the search. This argument ignores that the

17

Pennsylvania Rules, in accordance with the federal Constitution, also require that the search warrant itself "identify specifically the property to be seized" and "describe with particularity the person or place to be searched." *See* Pa. R. Crim. P. 205.

Accordingly, we hold that for an affidavit to cure a warrant's lack of particularity, the words of incorporation in the warrant must make clear that the section lacking particularity is to be read in conjunction with the attached affidavit.[8] Merely referencing the attached affidavit somewhere in the warrant without expressly incorporating it does not suffice. In this case, a reader of the warrant would know that an affidavit is attached, but would have no indication that the attached affidavit limits the officers in their search. Because the warrant did not explicitly incorporate the affidavit of probable cause into the description of the items to be searched for and seized, the warrant's lack of particularity is not cured by the affidavit.

*B. The Scope of the Actual Search*

The Government's alternative argument is that, even if the affidavit were not incorporated into the warrant, its lack of particularity was cured because the affidavit accompanied the

---

[8] These words of incorporation need not be included in the section lacking particularity, as long as the words of incorporation in the warrant make clear that the section is to be read with reference to the affidavit.

18

warrant, and the search was confined to the narrower scope of the affidavit. *See, e.g.*, *Leveto*, 540 F.3d at 211. However, the Government waived this argument by failing to raise it before the District Court.

A suppression argument raised for the first time on appeal is waived unless good cause is shown. *See United States v. Rose*, 538 F.3d 175, 182 (3d Cir. 2008). Thus we must first determine if the argument was raised before the District Court or, in the alternative, if the Government has shown good cause for failing to raise the argument earlier.

In *Groody* we recognized that other Courts of Appeals allow two exceptions to the general rule requiring that the affidavit be incorporated into the warrant. 361 F.3d at 240. The first exception allows a court to reference an unincorporated affidavit when the warrant contains "an ambiguity" or a clerical error that could be clarified by the affidavit. *Id.* The second exception provides that an unincorporated affidavit can cure an overly broad warrant if the actual search is restricted to the narrower scope of the affidavit. *Id.* We declined to apply the second exception in *Groody* because the case involved an affidavit and an actual search that were broader in scope than the terms of the warrant. *Id.* at 241. We emphasized the distinction between allowing an unincorporated affidavit to broaden, rather than limit, the scope of the search permitted by the warrant. *Id.* ("[T]he officers seek to use the affidavit to expand, rather than limit, the warrant. That makes all the

19

difference . . . . [I]t is one thing if officers use *less* than the authority erroneously granted by a judge. It is quite another if officers go *beyond* the authority granted by the judge." (emphases in original)).

But in our case, the Government did not argue before the District Court that the warrant could be cured by the narrower affidavit and the actual search even if the affidavit were not incorporated into the warrant. A footnote in the District Court's memorandum opinion shows that the Court did not believe this argument was before it. *See United States v. Tracey*, No. 1:08-126, 2008 WL 2622908, at *4 n.4 (M.D. Pa. June 30, 2008) ("We do not explore whether *Ortega-Jimenez* and cases like it might allow us to rely on the unincorporated affidavit[,] as the government does not argue that incorporation is not necessary, preferring instead to contend that incorporation in the application is all that is needed."). This argument is thus waived unless the Government can show good cause for its failure to raise it. *See Rose*, 538 F.3d at 182.

The Government argues that it had good cause because *United States v. Leveto* — the first decision in our Court upholding the use of the second exception discussed in *Groody* — was filed after the District Court's opinion in *Tracey*. *See Leveto*, 540 F.3d at 211–12. However, the Government easily could have distinguished *Groody* in its argument to the District Court before *Leveto* was issued. Even a cursory review of *Groody* reveals that it recognized the exception at issue, but

20

concluded that it could not be applied to *expand* the scope of a warrant. *See* 361 F.3d at 240–41. Our opinion in *Groody* provided the Government with the authority it needed to make this argument, but it failed to do so. The Government has not shown a good reason for this failure, and, accordingly, its argument is waived on appeal. *See Rose*, 538 F.3d at 182.

### C. *The Good Faith Exception*

Before the District Court, the Government conceded that the description of the items to be seized on the face of the warrant did not meet the Fourth Amendment's particularity requirement unless it was construed with reference to the narrower affidavit. In the event that the District Court concluded that the warrant did not incorporate the affidavit, the Government contended that the good faith exception to the exclusionary rule applied.[9] The Court rejected this argument,

---

[9] Tracey argues that the Government did not make certain arguments in favor of the good faith exception before the District Court, and thereby also waived them on appeal. Before that Court, however, the Government contended that the good faith exception applied because excluding the seized evidence in this case would not deter misconduct where Holler could have reasonably relied on the validity of the warrant, believing that he had incorporated the attached affidavit into the warrant. Accordingly, the good faith argument was not waived and will be addressed on the merits.

21

holding that the good faith exception did not apply because the warrant was general and the description of the items to be searched for and seized was "so facially defective that no reasonable police officer should have relied on it." *Tracey*, 2008 WL 2622908, at *5.

In *United States v. Leon*, the Supreme Court recognized that the purpose of the exclusionary rule — to deter police misconduct — would not be furthered by suppressing evidence obtained during a search "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." 468 U.S. 897, 919–20 (1984). The Court explained that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921; *see also Massachusetts v. Sheppard*, 468 U.S. 981, 988–90 (1984) (holding that the good faith exception applied in a case where the warrant lacked particularity because the officers reasonably believed the warrant was valid). Thus "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *Herring v. United States*, 129 S. Ct. 695, 701–02 (2009) (*quoting Illinois v. Krull*, 480 U.S. 340, 348–49 (1987)).

Accordingly, a determination that the Fourth Amendment has been violated does not necessarily require application of the

exclusionary rule. *Id.* at 700; *see also Leon*, 468 U.S. at 919–20. It applies when it serves "to safeguard Fourth Amendment rights . . . through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 348 (1974). To determine whether to apply the rule in a particular case, we weigh the benefits of the rule's deterrent effects against the costs of exclusion, which include "letting guilty and possibly dangerous defendants go free." *Herring*, 129 S. Ct. at 700, 701. Because of the high social costs of excluding evidence in a criminal case, the Supreme Court has instructed that the exclusionary rule should only be applied when "police conduct [is] . . . sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 702. Accordingly, we apply the rule when police conduct is "deliberate, reckless, or grossly negligent," or when it will deter "recurring or systemic negligence." *Id.* Put another way, isolated negligent acts on the part of the police do not warrant application of the exclusionary rule. *See id.*

We have previously recognized that the good faith exception does not apply in four limited circumstances:

> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

> 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her

23

neutral and detached function;

3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Zimmerman*, 277 F.3d 426, 436–37 (3d Cir. 2002) (*quoting United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)).  These limited exceptions are consistent with the approach taken in *Herring* because each of these circumstances involve conduct that is "deliberate, reckless, or grossly negligent," and thus the benefits of deterring future misconduct "outweigh the costs" of excluding the evidence.  *Herring*, 129 S. Ct. at 700, 702.  In this case, the District Court determined that the fourth exception applied because the warrant failed to particularize the items to be seized.

We part paths here.  The description of the items to be searched for and seized was as follows:

Any items, images, or visual depictions representing the possible exploitation of children including video tapes or photographs.

24

COMPUTERS: Computer input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media.

The Government conceded that the phrase "possible exploitation of children" was overly broad. However, in the attached affidavit, Holler wrote that he "expect[ed] to find within the residence . . . items which are/were used to commit the crime of Sexual Abuse of Children, to wit, C.S.A. section 6312 (c), (d)." The detailed affidavit also included the specific digital signature of the video of an adult male having vaginal sex with a minor female, and explained why seizure of the computer equipment was necessary. When read with reference to the attached affidavit, it is clear that the warrant authorized the officers to search for evidence of violations of 18 Pa. Cons. Stat. Ann. § 6312(c) and (d). The attached affidavit, therefore, provides the particularity necessary to satisfy the Fourth Amendment.[10]

---

[10] We recognize, as the District Court did, that Holler incorporated the problematic description in the warrant into the affidavit. However, the words of incorporation in the affidavit are succeeded by the following sentence: "Possession of these items are either in and of themselves a crime or they are/were utilized to commit a crime, to wit, Sexual abuse of children, 18 PA.C.S.A. section 6312(c), (d)." Reading the sentences together, the description incorporated from the warrant is limited by the language indicating that the officers were seeking

25

Though the Government conceded that the lack of particularity on the face of the search warrant violated the Fourth Amendment, we believe that Holler could have reasonably relied on the warrant because a reasonable officer in his position would assume that the warrant incorporated and would be construed with the attached affidavit. As noted above, in *Groody* we held that a warrant must "expressly incorporate" an affidavit in order for the warrant to be construed with reference to the affidavit. 361 F.3d at 239. Here, Holler checked the box indicating that the probable cause affidavit was attached and handwrote the number "7" to indicate the total number of pages. Notably, this language required the affidavit to be attached unless it was sealed. Next, Holler and the Magistrate Judge signed and the Magistrate Judge sealed each page of the seven-page affidavit, which was attached to the warrant.

Given the format of the Pennsylvania form Holler used, a reasonable police officer in Holler's position might assume that he had in fact "expressly" incorporated the affidavit by checking the boxes regarding the affidavit and attaching the affidavit to the warrant. Even though we conclude these efforts were not legally sufficient because the warrant does not clearly

---

permission to search for and seize evidence of violations of a specific statute's subsections. Accordingly, the affidavit particularly described the items to be searched for and seized.

26

indicate that the items-to-be-seized section is to be read with reference to the attached affidavit, an officer could understandably believe that he had met the requirements of the Fourth Amendment.[11] *See United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985) ("[I]t must . . . be remembered that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers."). Our cases recognize that an incorporated affidavit may narrow the scope of a warrant, and it would be reasonable for an officer in Holler's position to believe the affidavit was properly incorporated and, therefore, the warrant was valid. *See United States v. Hamilton*, 591 F.3d 1017, 1026, 1028–29 (8th Cir. 2010) (finding that the good faith exception applied even though the face of warrant lacked particularity, and it was unclear whether the affidavit was incorporated into the description of the items to be seized, because the officer had an objectively reasonable belief that the warrant and its reference to the affidavit authorized the search).

In addition to holding a reasonable belief that the warrant incorporated the narrower affidavit, Holler's use of the

---

[11] The reasonableness of Holler's belief is supported by the fact that the Court of Common Pleas Judge, who ruled on Tracey's pretrial motions in state court, concluded that the description of the items to be seized in the warrant must be read with reference to the affidavit of probable cause.

27

phrase "possible exploitation of children" on the face of the warrant does not make it "so facially deficient" that no reasonable officer could rely on it. The section below the description of the items to be seized and the premises to be searched is titled "Violation of," and directs the applicant to "[d]escribe conduct or specify statute." In response, Holler wrote in "6312(c),(d) PA Crimes Code," identifying the Pennsylvania statute criminalizing the dissemination and possession of media containing depictions of "a child under the age of 18 years engaging in a prohibited sexual act." *See* 18 Pa. Cons. Stat. Ann. § 6312. The warrant also identifies the date of the violation as January 9, 2006 — the day the officer found the video of an adult male having vaginal sex with a minor female by searching the peer-to-peer networks. In this context, a reasonable officer could rely on the validity of the warrant if he believed that the phrase "possible exploitation of children" would be read in conjunction with the statute, and thus the type of exploitation of children they were authorized to search for was limited to sexual abuse of children in violation of § 6312(c) and (d).

A reasonable officer would also have confidence in the validity of the warrant after presenting it and having it approved by a district attorney and the Magistrate Judge, as occurred here. *See, e.g.*, *United States v. Otero*, 563 F.3d 1127, 1134–36 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 330 (2009) (holding that the good faith exception applied to a warrant that lacked particularity, in part because the agent consulted with the

28

Assistant United States Attorney, who informed her it met legal requirements); *cf. United States v. Hallam*, 407 F.3d 942, 947 (8th Cir. 2005) (concluding that the good faith exception applied where the officer relied on the prosecutor's determination that the affidavit provided probable cause).

We also note that the application of the good faith exception is appropriate because Holler, who drafted the narrower affidavit and was aware of its limits, led the search team at Tracey's home. In accordance with the narrower affidavit, Holler informed Tracey and his wife that he was searching for child pornography when the officers arrived at Tracey's home. Indeed, all of the items seized from Tracey's home were video or computer equipment, and the 208 images and 48 movies taken from one of the computers all allegedly contained child pornography — consistent with the scope of the narrower affidavit. These facts support our good faith determination and demonstrate that the primary purposes of the Fourth Amendment's particularity requirement — limiting the officers' discretion and notifying the subjects of the scope of the authorized search and seizure — were achieved in this case. *See United States v. Riccardi*, 405 F.3d 852, 861–64 (10th Cir. 2005) (holding that the good faith exception applied where the warrant lacked particularity, but the affidavit limited the scope of the search, the officers were aware of the affidavit, and the search was limited to that permitted by the affidavit).

Tracey urges that the good faith exception does not apply

because the warrant is "general," and that good faith cannot save a general warrant. Appellee's Br. 26 (*citing United States v. Yusuf*, 461 F.3d 374 (3d Cir. 2006)). We reject Tracey's argument that the warrant was "general" such that it "vest[ed] the executing officers with unbridled discretion to conduct an exploratory rummaging through [a defendant's] papers in search of criminal evidence." *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002) (*quoting United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982)). Examples of general warrants are those authorizing searches for and seizures of such vague categories of items as "'smuggled goods,'" "'obscene materials,'" "'books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas,'" "'illegally obtained films,'" and "'stolen property.'" *Id*. (citations omitted). In *Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d at 146, a case involving illegal money laundering, we considered whether a warrant authorizing a search for the following items constituted a "general" warrant:

> 1. Receipts, invoices, lists of business associates, delivery schedules, ledgers, financial statements, cash receipt, disbursement, . . . sales journals, and correspondence.

30

> 2. Computers, computer
> peripherals, related instruction
> manuals and notes, and software in
> order to conduct an off-site search
> for electronic copies of the items
> listed above.

*Id*. at 149. Despite the breadth of the warrant, which imposed virtually no limitation on the types of business records subject to seizure, and which authorized a search for "correspondence" generally, then-Judge Alito wrote for the majority that the warrant was not "general": "The warrant thus 'describ[ed] in . . . inclusive generic terms what is to be seized.' It did not vest the executing officers with 'unbridled discretion' to search for and seize whatever they wished. It was indubitably broad, but it was not 'general.'" *Id*. at 149 (internal citation omitted).

Here, the warrant directs officers to search for items representing the "possible exploitation of children," but specifically cites on its face the statutory provision criminalizing possession and distribution of images of children engaged in prohibited sexual acts. Read as a whole, this warrant did not authorize an exploratory rummaging. Therefore, it was not a general warrant, and a reasonable officer could rely on it.

The officer's failure to incorporate the affidavit — a task that could be accomplished by simply adding 'see attached affidavit' in the appropriate section — and use of the phrase

31

"possible exploitation of children" do not amount to "deliberate, reckless, or grossly negligent conduct" that justifies the application of the exclusionary rule. Nor has Tracey presented evidence that this violation is an example of "recurring or systemic negligence." *See Herring*, 129 S. Ct. at 702. Instead, Holler and other officers undertook a thorough investigation, as detailed in the affidavit, and the Magistrate Judge found probable cause and issued the warrant. *See Sheppard*, 468 U.S. at 989 (holding that the good faith exception applied where "[t]he officers . . . took every step that could reasonably be expected of them"). The officers had good reason to believe in the warrant's validity. Accordingly, application of the exclusionary rule is not justified.

\* \* \* \* \*

Holler did not explicitly incorporate the affidavit of probable cause into the search warrant, and therefore the affidavit cannot be used to narrow the terms of the concededly overly broad warrant. Because the Government lacked good cause for its failure to argue before the District Court that the warrant's lack of particularity could be cured when the affidavit was attached to the warrant and the actual search was limited to the terms of the narrower affidavit, this argument was waived. However, under these circumstances the good faith exception applies and exclusion of the evidence is not justified. Accordingly, the order of the District Court suppressing the evidence seized, along with the statement made during the

32

search, is reversed, and this case is remanded for further proceedings.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  08-3290

UNITED STATES OF AMERICA

Appellant

v.

RALPH DOUGLAS TRACEY

APPENDIX

# COMMONWEALTH OF PENNSYLVANIA

## COUNTY OF Adams

## APPLICATION FOR SEARCH WARRANT AND AUTHORIZATION

| Docket Number (Issuing Authority): MD-0000022-06 | Police Incident Number: 060219 | Warrant Control Number: |
|---|---|---|

JAMES HOLLER, Liberty Township Police Dept.  (717)642-6103  01/30/2006

AFFIANT NAME   AGENCY   PHONE NUMBER   DATE OF APPLICATION

**IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED (Be as specific as possible):**

Any items, images, or visual depictions representing the possible exploitation of children including video tapes or photographs.

COMPUTERS: Computer input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media.

**SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED (Street and No., Apt.No., Vehicle, Safe Deposit Box, etc.):**

2896 Tract Road, Fairfield, PA., that location being a single story rancher, with tan siding with reddish shingles. Any vehicles and outbuildings on the curtilage of the property including large shop, tan in color with a red roof in the rear of the residence with a sign saying, "Doug's Auto Body" on the front of the building.

**NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (If proper name is unknown, give alias and/or description):**

Ralph Douglas Tracey (DOB:02/01/67)

**VIOLATION OF (Describe conduct or specify statute):**

6312(c),(d) PA Crimes Code

**DATE(S) OF VIOLATION:**
01/09/2006

☒ **Warrant Application Approved By District Attorney-DA File No.** 060219
(If DA approval required per Pa.R.Crim.P. 2002A with assigned File No. per Pa.R.Crim.P. 107)

☒ Additional Pages Attached(Other than Affidavit of Probable Cause)

☒ Probable Cause Affidavit(s) MUST be attached(unless sealed below)  Total number of pages: __7__

TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED

The below named Affiant,being duly sworn(or affirmed) before the Issuing Authority according to law,deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at the particular premises or in the possession of the particular person as described above.

Liberty Township Police Dept.

Signature of Affiant   Agency or Address if private Affiant   Badge Number

Sworn to and subscribed before me this __30th__ day of ___January___ 2006. Mag.Dist.No.

2267 Fairfield Road, Gettysburg, PA 17325   (SEAL)

Signature of Issuing Authority   Office Address

**SEARCH WARRANT TO LAW ENFORCEMENT OFFICER:**  WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto, from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

☐ This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later then:*

☒ This Warrant shall be served as soon as practicable and may be served any time during day or night but in no event later than:**

__1:30__ P.M, o'clock __February 1__ __2006__.

\* The issuing authority should specify a date not later than two(2) days after issuance. Pa.R.Crim.P. 2005(d).
\*\* If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 2005(g).

issued under my hand this __30th__ day of ___January___ __2006__ at __1:30 P.M__, o'clock.

51-3-04   1st Monday, January, 2012.

Signature of Issuing Authority   Mag.Dist. or Judicial Dist.No.   Date Commission Expires

Title of Issuing Authority: ☐ Magisterial District Judge   ☐ Common Pleas Judge   ☐ _____

☐ For good cause stated in the affidavits(s) the Search Warrant Affidavit(s) are sealed for _____ days by my certification and signature. (Pa.R.Crim.P. 2011)

_____   (Date)   (SEAL)

Signature of Issuing Authority (Judge of the Court of Common Pleas or Appellate Court Justice or Judge).

AOPC 410A-05 (reproduction)

TO BE COMPLETED BY ISSUING AUTHORITY


| Docket Number (Issuing Authority): | Police Incident Number: 060219 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

Your affiant, Chief James A. Holler, of the Liberty Township Police Department, is a member of the Internet Crimes Against Children (ICAC) task force which is comprised of Federal, State and Local Law Enforcement. The Task Force is responsible for conducting undercover online investigations, responding to complaints regarding children sexually exploited via the Internet, conducting community education programs and monitoring of the Internet for the bartering in child pornography. Your affiant has been a law enforcement officer for 14 years. During this time your affiant has had occasion to investigate hundreds of incidents of child abuse. During this time your affiant has received over 100 hours of training in the field of child physical and sexual abuse as well as the use of the Internet by Sexual Offenders to seduce, entice and gain access to children for the purposes of sexual exploitation

From my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities. I have participated in investigations into the activities of individuals and groups involved in sexual assault, the use of the Internet to entice, seduce and gain access to children, endangering the welfare of a child, terroristic threats, harassment and conspiracy. In addition, I have been involved in the preparation and execution of numerous search warrants.

I have read and am familiar with periodicals that cater to those who are involved in the sexual exploitation of children. As a result of my training and experience I am familiar with the methods employed by Preferential Child Molesters to seduce, entice, and gain access to children. Preferential Child Molesters are persons whose sexual objects are children. They receive sexual gratification and satisfaction from actual physical contact with children, as well as from fantasy involving the use of pictures, or other photographic, or art media, such as videos. Preferential child molesters collect sexually explicit materials consisting of photographs, magazines, motion pictures, videotapes, books and slides, which they use for their own sexual gratification. This information is readily available on the Internet and is easily stored on computer-related media. I am familiar with the materials, including pornographic and illustrated images of children, used and saved by Preferential Child Molesters, which are referred to as child erotica. In addition, I am also familiar with the methods employed by Preferential Child Molesters to gain access to others who share in their illicit activities. Through my training and experience I have learned that the current most common trend of exchanging child pornography and correspondence is through the use of computers.

Detective Rob Jones is a certified police officer with the City of Greensburg Police Department and has been a law enforcement officer for 10 years. He is currently assigned to the Pennsylvania State Police Area III Computer Crime Task Force and is responsible for enforcing violations of Commonwealth statutes involving the criminal use of technology in 16 counties after having been sworn as a special county detective in each judicial district. In this capacity he is responsible for conducting and assisting in investigations into the activities of individuals and criminal groups acting in pursuit of illegal activities. These activities are facilitated through the use of computers and computer networks. During his tenure as a police officer, he has conducted and participated in numerous investigations of criminal activity, including, but not limited to, the

THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 1/30/06 | Issuing Authority Signature | Date 1/30/06 (SEAL) |
|---|---|---|---|

Page 1 of 7 Pages

AOPC 410B-10-24-98 (reproduction)


| Docket Number (Issuing Authority): | Police Incident Number: 060219 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

investigation of narcotics, fraud, identity theft, sexual crimes and the trafficking of child pornography in interstate and foreign commerce. During the investigation of these cases, he has executed or participated in the execution of numerous search warrants, and seized evidence of these violations. Several of these investigations have resulted in arrests and convictions in state and federal court.

He has received specialized formal training from the Pennsylvania State Police, Federal Bureau of Investigation, Western Pennsylvania High Technology Crime Center and other agencies in the areas of child pornography, pedophile behavior, collectors of other obscene material, computer forensics and Internet crime. He is currently certified by the International Association of Computer Investigative Specialists as a Certified Electronic Evidence Collection Specialist and is a member of the FBI Mon Valley Cyber Crime Task Force.

Synopsis

Your affiant, based upon his experience and expertise, expects to find within the residence of 2896 Tract Road, Liberty Township, Adams County, PA 17320, items which are/were used to commit the crime of Sexual Abuse of Children, to wit, 18 PA. C.S.A. section 6312 (c), (d). Your affiant has delineated the items your affiant expects to find within said location which is captioned under "Items to be searched for and seized", and your affiant incorporates that list herein. Possession of these items are either in and of themselves a crime or they are/were utilized to commit a crime, to wit, Sexual abuse of children, 18 PA.C.S.A. section 6312 (c), (d).

Your affiant requests a search warrant be issued by this court authorizing and directing your affiant to search the herein described place, and declares that the grounds for issuance of said warrant are as follows:

Peer to Peer (P2P) File Sharing Networks & Gnutella

In February 2005, this Affiant attended training related to the investigation of persons using Gnutella peer to peer software on the Internet to collect and trade child pornography. Your Affiant knows from training and experience that peer to peer networks, including the Gnutella network, are frequently used to trade digital files of child pornography. These files include both image and movie files.

While examining the Gnutella peer to peer file sharing network your Affiant learned that computers on the Gnutella network have software installed on them that facilitates the trading of images. The software, when installed, allows the user to search for pictures, movies and other digital files by entering text as search terms.

Your Affiant knows from testing the software that the search results presented to the user allow the user to select a file and then receive that file from other users around the world. Often these

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 1/30/06 | Issuing Authority Signature | Date 1/30/06 |
|---|---|---|---|

Page 2 of 7 Pages

AOPC 410A-10-24-98 (reproduction)


| Docket Number (Issuing Authority): | Police Incident Number: 060219 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

users can receive the selected movie from numerous sources at once. The software can balance the network load and recover from network failures by accepting pieces of the movie from different users and then reassembling the movie on the local computer.

Your Affiant knows that the Gnutella network can only succeed in reassembling the movie from different parts if the parts all come from the exact same movie. Your Affiant knows that multiple persons sharing one movie can deliver different pieces of that movie to the local software and the local software can insure that a complete and exact copy can be made from the parts. Your Affiant has been able to confirm from use of the software that different copies of the same movie can be named differently.

Your Affiant knows that computer software has different methods to insure that two files are exactly the same. Your Affiant knows from training and experience that the method used by the Gnutella network involves a file encryption method called Secure Hash Algorithm Version 1 or SHA1. Your Affiant has researched the SHA1 method and has learned that it is the Secure Hash Algorithm (SHA), developed by the National Institute of Standards and Technology (NIST), along with the National Security Agency (NSA), for use with the Digital Signature Standard (DSS) as specified within the Secure Hash Standard (SHS). The United States of America has adopted the SHA-1 hash algorithm described herein as a Federal Information Processing Standard.

Your Affiant knows that digital files can be processed by this SHA1 process resulting in a digital signature. By comparing these signatures your Affiant can conclude that two files are identical with a precision that greatly exceeds 99.9 percent certainty.

Your Affiant has learned from using the Gnutella software that the system uses the SHA1 digital signature to verify the unique identity of individual files. Your Affiant was able to demonstrate that users attempting to trade files on the Gnutella file sharing network could choose to place files from their local computer in a shared file directory. If that same user then starts the Gnutella software that local computer could then calculate the SHA1 signature for each shared file and provide that information to other users wishing to trade files.

Your Affiant learned that entering search terms in the Gnutella software could result in a list of SHA1 digital signatures that your Affiant could choose from. By using this type of search your Affiant could compare the offered SHA1 signatures with SHA1 signatures known to belong to movies or images of known child pornography. Once a matching set of digital signatures was identified, your Affiant could use publicly available software to request a list of Internet network computers that are reported to have the same images for trade or are participating in the trade of known images. This feature allows your Affiant to conduct undercover operations that involve images known to be actual and identified child pornography involving identified children.

Your Affiant knows from training and experience that Internet computers identify each other by an Internet Protocol or IP address. Your Affiant knows that these IP addresses can assist law enforcement in finding a particular computer on the Internet. These IP addresses can typically lead the law enforcement officer to a particular Internet service company and that company can typically

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 1/30/06 | Issuing Authority Signature | Date 1/30/06 |
|---|---|---|---|

Page 3 of 7 Pages


| Docket Number (Issuing Authority): | Police Incident Number: 060219 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

identify the account that uses the address to access the Internet.

Your Affiant learned that searching on the Gnutella peer to peer network as described above can result in your Affiant receiving a list of addresses identifying locations where a computer has Gnutella software installed and individual files have been reported as available for download with a specific digital signature.

Your Affiant has learned that by examining the list of IP addresses your Affiant can locate computers that are reported to be in Adams County, Pennsylvania. By comparison of the SHA1 digital signatures your Affiant can conclude that a computer, originating from an IP address known to be in Adams County, Pennsylvania, has Gnutella or compatible software installed on it and contains specific and known images of child pornography.

Investigative Preparation and Investigative Details

On January 9, 2006, at approximately 1547 hours, Officer Robert Jones of the Greensburg Police Department conducted a proactive online investigation into the distribution of child pornography via the Internet. During the investigation, Officer Jones examined various Peer To Peer (P2P) trading networks where users can trade files of any type to each other. Officer Jones searched for files titled "pedo", a search term that locates files containing child pornography. Officer Jones knows through experience and training that the "pedo" search term typically results in the uses being presented with a list of files that include a movie file, commonly referred to as a MPEG which has a digital signature of SHA-1 value, ensuring a 99.9999 percent certainty of the files bearing this value having the same content, of QMI4AGKPC36O5JD2ZM6ODZFREUI5WMBJ. This MPEG file depicts a minor age female having vaginal sex with an adult male. *BABYJ - vicky Rock 5yo Enjoys gentle Rod Full From Vez*

Your Affiant can conclude from training and experience that the search results indicated that a computer located at 69.171.97.89 was contributing to the distribution of child pornography. Officer Jones downloaded a list of files from the Internet protocol address of 69.171.97.89 which included a specific digital signature previously identified as child pornography confirming that QMI4AGKPC36O5JD2ZM6ODZFREUI5WMBJ was a movie depicting a minor age female having vaginal sex with an adult male. Your Affiant knows from experience that the software can be configured to allow parts of the movie to be shared even if the copy located at 69.171.97.89 has not yet been completely downloaded.

Officer Jones conducted an Internet search on the origin of the IP address 69.171.97.89 and found it to be issued to a cable modem subscriber with Adelphia.

On January 10, 2006 Officer Jones requested and received a Order of Court, signed by Common Pleas Court Richard McCormick, directing Adelphia to supply subscriber information as well as Internet connection access logs for the person assigned/using the IP address 69.171.97.89 on 01/09/06 at 1517 hours.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 1/30/06 | Issuing Authority Signature | Date 1/30/06 (SEAL) |
|---|---|---|---|

Page 4 of 7 Pages

AOPC 410B-10-24-98 (reproduction)


| Docket Number<br>(Issuing Authority): | Police Incident<br>Number: 060219 | Warrant Control<br>Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

On January 13, 2006, a response from Adelphia was received by your affiant indicating that one account had been accessing the IP address on the given date. The account contained the following information:

i. Name:        Doug Tracey
ii. Address:        2896 Tract Road, Fairfield, PA 17320
iii.   Phone Number:   717-642-9261
iv. Account Status: Active
v. Email Address: dougsauto@adelphia.net

Your Affiant checked Penndot driver's records and found that PA OLN 25099926 is issued to Ralph Douglas Tracey with a date of birth of 02/01/67 residing at 2896 Tract Road, Fairfield, PA 17320.

On 01/30/2006, your affiant checked with the Adams County Tax Bureau and found that 2896 Tract Road, Fairfield, PA  17320 is owned by Doug Tracey.

On 01/29/2006 your affiant went to 2896 Tract Road, Fairfield, PA and observed the residence to be a single story rancher, with tan siding with reddish shingles. The residence has a front deck and also has a large shop, tan in color with a red roof in the rear of the residence with a sign saying, "Doug's Auto Body" on the front of the building.

Based on his past experience and training, Affiant knows that persons involved in viewing, sending or receiving child pornography tend to retain said material for extended periods of time, months or even years. Those individuals interested in child pornography prize the visual images that they have obtained, traded for and/or sold. In addition to the emotional value the images have to the collector (usually quite significant in Affiant's experience), the visual images are intrinsically valuable for trading and/or selling and therefore are rarely destroyed or deleted by the collector.

Kenneth V. Lanning is a retired FBI agent and a widely acknowledged expert in the field of child sexual exploitation. Lanning spent 30 years with the FBI's Behavioral Science Unit in Quantico, Virginia and in 1997 he received the FBI Director's Award for Special Achievement for his career accomplishments in connection with missing and exploited children. Lanning has aptly noted that many collectors of child pornography "swap pornographic photographs the way boys swap baseball cards". @ K. LANNING, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS 69 (National Center for Missing and Exploited Children, 4th ed. 2001). Agent Lanning has found, moreover, that no matter how much child pornography the collector has, often "he never has enough"; and he "rarely throws anything away". (id. at 71). Another typical feature of a child pornography collection, according to Lanning, is its constancy. Even if evidence of the existence of a child pornography collection is several years old, Agent Lanning states that "chances are he still has the collection now -- only it is larger" (id.).

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 1/30/06 | Issuing Authority Signature | Date 1/30/06 |
|---|---|---|---|

AOPC 410B-10-24-98 (reproduction)

| COMMONWEALTH OF PENNSYLVANIA |  | AFFIDAVIT OF PROBABLE CAUSE |
|---|---|---|
| COUNTY OF  Adams | | |

| Docket Number (Issuing Authority): | Police Incident Number:  060219 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

Seizure of Computers and Digital Evidence

Affiant knows from training and experience that searches and seizures of evidence from computers require agents to seize most or all computer items (hardware, software, passwords and instructions) to be processed later by a qualified computer expert in a laboratory or other controlled environment. Computer storage media to include but not limited to floppy disks, hard drives, tapes, DVD disks, CD-ROM disks or other magnetic, optical or mechanical storage which can be accessed by computers to store or retrieve data or images of child pornography can store the equivalent of thousands of pages of information. Users may store information or images in random order with deceptive file names, which requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process renders it impractical to attempt this kind of data search on site.

Affiant knows from training and experience that searching computer systems for criminal evidence requires experience in the computer field and a properly controlled environment in order to protect the integrity of the evidence and recover even "hidden", erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"), the controlled environment of a laboratory is essential to its complete and accurate analysis.

Affiant knows from training and experience that in order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the computer. In cases like this one where the evidence consists partly of graphics files, the input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media and the storage media are also essential to show the nature and quality of the graphic images which the system could produce. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media) as well as documentation, items containing or displaying passwords, access codes, usernames or other identifiers necessary to examine or operate items, software or information seized or to activate specific equipment or software.

Affiant knows from training and experience that persons trading in, receiving, distributing or possessing images involving the exploitation of children or those interested in the actual exploitation of children often communicate with others through correspondence and other documents or (whether digital or written) which could tend to identify the origin of the images as well as provide evidence of a persons interest in child pornography or child exploitation. They may also record images onto vedeo format to be kept as treasures and/or sold to others.

Affiant knows from training and experience that files related to the exploitation of children found on computers are usually obtained from the Internet using application software which often leaves files, logs or file remnants which would tend to show the exchange, transfer, distribution, possession or origin of the files.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date  1/30/06 | Issuing Authority Signature | Date  1/30/06 |
|---|---|---|---|

Page  6  of  7  Pages

AOPC 410B-10-24-98 (reproduction)



| Docket Number (Issuing Authority): | Police Incident Number: 060219 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

Affiant knows from training and experience that computer software or hardware exists that allows persons to share Internet access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address. Examination of these items can reveal information about the authorized or unauthorized use of Internet connection at the residence.

Affiant knows from training and experience that computers used to access the Internet usually contain files, logs or file remnants which would tend to show ownership and use of the computer as well as ownership and use of internet service accounts used for the internet access.

Affiant knows from training and experience that search warrants of residences involved in computer related criminal activity usually produces items that would tend to establish ownership or use of computers and ownership or use of any Internet service accounts accessed to obtain child pornography to include credit card bills, telephone bills, correspondence and other identification documents.

Affiant knows from training and experience that search warrants of residences usually reveals items that would tend to show dominion and control of the property searched, to include utility bills, telephone bills, correspondence, rental agreements and other identification documents.

Conclusions

Believing the above information to be true and correct to the best of your affiant's knowledge and belief, your affiant requests a search warrant be issued for the residence of 2896 Tract Road, Fairfield, PA.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 1/30/06 | Issuing Authority Signature | Date 1/30/06 |
|---|---|---|---|

Page ___ of ___ Pages

AOPC 410B-10-24-98 (reproduction)