**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3512
_____

UNITED STATES OF AMERICA

v.

ANTHONY THOMAS,
a/k/a Ant

Anthony Thomas,
                    Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 11-cr-00008-001)
District Judge:  Honorable Timothy J. Savage
_____

Submitted Under Third Circuit LAR 34.1(a)
April 17, 2012
_____

Before: VANASKIE, BARRY and CUDAHY,[*] Circuit Judges

(Opinion Filed: May 10, 2012 )
_____

OPINION
_____

---

[*] Honorable Richard D. Cudahy, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

BARRY, <u>Circuit Judge</u>.

Defendant Anthony Thomas appeals the District Court's denial of his motion to suppress evidence uncovered in a search of his vehicle, pursuant to a warrant, following his arrest. He argues that his arrest and the subsequent search were not supported by probable cause. He argues, as well, that the affidavit submitted with the warrant application was deficient, precluding good faith reliance. We will affirm.

## I. BACKGROUND

On January 6, 2011, a grand jury indicted Thomas for (1) distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1); (2) possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1); (3) possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); and (4) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Thomas pleaded not guilty and moved to suppress evidence obtained in a search of his vehicle.

The District Court held a hearing at which Philadelphia Police Officer Theresa Weaver testified to the following: On November 2, 2010, Officer Weaver received information from a confidential informant ("CI") that a black male named Anthony Thomas, a/k/a "Ant," was dealing in large quantities of cocaine in south and southwest Philadelphia, drove a tan Honda Accord with the Pennsylvania license plate, HGG-3378, and used the cell phone number, (267) 304-6048. Weaver obtained a photograph of Thomas and showed it to the CI, who confirmed that it was the same person he had

2

described. Weaver then placed a call to the phone number the CI had provided and handed the phone to the CI, who arranged a drug sale for the following day.[1]

On November 3, 2010, using the CI's phone, Weaver placed another call to the number provided and handed the phone to the CI; the man who answered informed him, "No, I'm not coming. No, just no." Later that day, Weaver's supervisor, Sergeant Brereton, radioed that he saw a tan Honda in the parking lot of the Purple Orchid Strip Club on 61st Street and Passyunk Avenue. Brereton reported that he saw the Honda pull up and park, and a white male exit from the passenger's side and enter a white Grand Am. The officers stopped the Grand Am as it drove away and arrested the passenger, Brian Lester. They frisked Lester and found two green packets of cocaine. Lester stated that he just purchased the cocaine from "Ant," who drives a tan Honda, and provided a different cell phone number for Thomas than the one previously given by the CI. Other officers followed the tan Honda as it left the parking lot and, before losing it, confirmed that Thomas was the driver.

On November 4, 2010, Weaver saw the tan Honda in the courthouse parking lot and followed Thomas inside. Officers followed him as he exited the courthouse, went to his car, and drove to neighboring Delaware County. They observed Thomas go to 931 Barker Road in Sharon Hill, knock on the door, and enter with a key. After about an hour and a half, Thomas left the building, returned to his car, and drove back to Philadelphia. Weaver's partner then had Lester call Thomas to arrange a drug transaction at the Purple Orchid parking lot. The officers, monitoring the parking lot, observed the tan Honda

---

[1] On cross, Weaver testified that a different CI placed this call.

arrive and a black female enter the passenger's side of the vehicle. She exited minutes later and entered another vehicle that left the area. The tan Honda left shortly thereafter. Weaver told the officers to stop the Honda and arrest Thomas for selling cocaine to Lester the previous day. Officer Simmons arrested Thomas, confiscated $1,014 from his person, and took him to the precinct for processing.

Almost an hour later, a K-9 officer arrived to scan the vehicle. The dog alerted to the presence of narcotics on the front passenger's side door and trunk. The Honda was brought to the precinct for an inventory search and taken to the impoundment lot. Weaver prepared an application for a warrant to search the Honda, which issued on November 5th. Pursuant to the warrant, Officers Simmons and Francis searched the vehicle that day. They recovered cocaine and a loaded firearm from a hidden compartment.

Following a hearing, the District Court denied Thomas's motion to suppress the evidence recovered in the search, concluding, as relevant here, that there was probable cause to search his car without a warrant and, in any event, that the officers who executed the warrant relied on the warrant in good faith. Thomas subsequently pleaded guilty to all four counts, while reserving his right to appeal the denial of his motion to suppress. He was sentenced to 72 months' imprisonment.

## II. ANALYSIS

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We review the denial of a motion to suppress for clear error as to the underlying facts, and *de novo* as to the legal conclusions

4

in light of these facts. *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010).[2]

Thomas argues that the police lacked probable cause to arrest him and search his vehicle, and that the government cannot rely on the good faith exception to the warrant requirement because the affidavit in support of the warrant application was misleading and facially deficient. We conclude that the officers had probable cause to arrest Thomas; that the warrant to search his vehicle was supported by probable cause; and that, in any event, the officers relied on the warrant in good faith.

There was ample probable cause supporting Thomas's arrest. Probable cause to arrest exists if, given the totality of the circumstances, a prudent person could "believe that a crime has been committed and the person to be arrested committed it." *United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002). Here, the primary basis for probable cause was not the CI's tip. As even Thomas concedes, the phone number the CI provided led to a dead end when the man who answered ultimately declined to sell drugs. The CI simply provided a good lead—the name of the suspect, a description of his vehicle, and the license plate. It was the information received from Lester that was the more important basis of probable cause to arrest Thomas. Lester corroborated the suspicious activity described by the CI: he told the officers that he purchased cocaine from a man named "Ant" who drives a tan Honda—the man identified by the CI as a cocaine dealer—and arranged a drug transaction at a time and location at which Thomas appeared. The officers also recovered cocaine from Lester immediately after seeing him leave the tan Honda that Thomas was observed driving shortly afterwards. Given these

---

[2] Thomas does not challenge the District Court's findings of fact.

facts, a prudent person could surely believe that Thomas had sold Lester cocaine.

In addition, the search of Thomas's vehicle was lawful because it was conducted pursuant to a valid warrant, and, in any event, the officers relied on the warrant in good faith. In the context of a search, probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (internal quotation omitted). Under the good faith exception, evidence discovered pursuant to an invalid warrant will not be suppressed if the officers' reliance on the warrant was objectively reasonable. *See id.* at 561 (discussing *United States v. Leon*, 468 U.S. 897, 923 (1984)). Typically, the mere existence of a warrant will suffice to demonstrate good faith. *Id.* Reliance on a warrant will not be reasonable, however, when the application contains deliberate or reckless material falsehoods, or is so lacking in probable cause that no reasonable officer could rely on it. *Id.* at 561 n.19.

Thomas argues that the warrant was not supported by probable cause and the affidavit in support of the warrant application omitted supposedly exculpatory information. He maintains that the government conceded the warrant's invalidity at the suppression hearing. We do not agree with this characterization.[3] The government conceded that the affidavit was "poorly drafted," not that the warrant was invalid. (App. 101a).

Furthermore, the information presented in the supporting affidavit was sufficient

_____

[3] The District Court did not address the warrant's validity in its findings, only observing, for reasons not entirely clear to us, that no "intellectual[ly] honest law trained person" would have signed it. (App. 119a).

6

to establish probable cause and, certainly, to support good faith reliance. Thomas argues, first, that the omission of the CI's inability to arrange a drug transaction with Thomas was material. There is no requirement, however, that an officer include all failed investigatory attempts in the probable cause affidavit. Moreover, this information, while not inculpatory, is far from exculpatory, and its inclusion would not have defeated probable cause. *See United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). Thomas also argues that the affidavit did not support a finding of probable cause because it failed to mention any indicia of the CI's reliability, that the calls made to Thomas's cell phone concerned arranging drug transactions, or Lester's statement that he purchased the cocaine from "Ant." Although this information would have strengthened the application, the totality of the circumstances presented to the Magistrate—the CI's identification of the vehicle and license plate; the officers' observation of Lester exiting that vehicle and Thomas driving it; the cocaine discovered on Lester immediately thereafter; Brereton's observation of the brief interaction with the black female shortly before Thomas's arrest; and, most significantly, the K-9 alert—supported the finding that there was more than a fair probability that the tan Honda contained narcotics. *See Stearn*, 597 F.3d at 557 ("[S]eemingly innocent activity [might] bec[o]me suspicious in light of the initial tip." (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983))).

Finally, even if the affidavit supporting the warrant application had not sufficiently demonstrated probable cause, it certainly was not so lacking that no officer could reasonably presume the warrant itself to be valid. The affidavit did, indeed, contain some factual inaccuracies—for example, the license plate was incorrectly listed as "HJJ-3378"

and two different names were given for the K-9 dog who scanned Thomas's car—but these minor inaccuracies surely do not indicate a deliberate or reckless disregard for the truth. Therefore, the good faith exception would apply even if the warrant had not been supported by probable cause.

## IV.  CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court.