

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-3-2004

# USA v. Johnson

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3233

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Johnson" (2004). *2004 Decisions.* Paper 1029.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1029

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-3233
_____

UNITED STATES OF AMERICA,

vs.

HASHIM JOHNSON,
a/k/a Hameen Abdulah

HASHIM JOHNSON
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

District Court Judge: The Honorable Legrome D. Davis
(D.C. Civ. No. 02-Cr-504)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2004

Before: ALITO and CHERTOFF, Circuit Judges, and
DEBEVOISE[*], Senior District Court Judge

(Opinion Filed: February 3, 2004)
_____

OPINION OF THE COURT

_____

[*] Honorable Dickinson R. Debevoise, Senior United States District Judge for the District of New Jersey, sitting by designation.

**Debevoise, Senior District Court Judge**

Appellant, Haashim Johnson, pled guilty to a two count indictment charging possession of more than 500 grams of cocaine with intent to distribute and possession of more than 50 grams of cocaine base with intent to distribute.

Prior to entry of the plea Johnson had moved to suppress evidence found in the house where he resided. He contended that the original warrantless entry upon the premises was unlawful because there was no reason to believe that he was in the premises at the time. He contended that after the original entry and failure to find him there was no justification for police officers to continue their entry and search of the premises. The District Court denied Johnson's motion. Upon pleading guilty Johnson preserved his right to appeal the denial of his motion to suppress.

We conclude that the government sustained its burden of justifying the warrantless entry of the premises in which Johnson resided and that the crack cocaine found in the premises was discovered during the course of that search. The District Court's order denying Johnson's motion to suppress the crack cocaine was correct and the judgment of conviction will be affirmed.

## The Facts

In April 2001, following Johnson's failure to appear in Camden County Court and his conviction in absentia for possession of marijuana with intent to distribute and

attempting to elude the police a bench warrant was issued for his arrest. It was ascertained that Johnson was driving a 2001 Ford Excursion registered to Hameen Abdulah. It was also ascertained that a Pennsylvania driver's license with Johnson's photograph had been issued on April 3, 2001 in the name of Hameen Abdulah. The address on the license was 6834 Lynford Street, Philadelphia.

New Jersey State Police Detective Christopher Leone and Deputy United States Marshall John Wilson of the New Jersey Fugitive Task Force, drove by the Lynford Street address several times in June 2001 and did not see the Excursion or observe anyone entering or leaving the premises. Deputy United States Marshal Mickey Pease interviewed two residents of Lynford Street. They identified Johnson as the occupant of 6834 Lynford Street. One resident reported that he had seen Johnson driving the Excursion and that Johnson was at the residence when the vehicle was present.

The critical events occurred on June 28, 2001. Two teams of law enforcement officers participated in these events – a team of officers who conducted an extended surveillance and a six - member SWAT team that made the initial entry into the premises, quickly searched it to ascertain if Johnson were there and then left, leaving control of the premises in the hands of the officers conducting the surveillance. Members of both teams testified at the suppression hearing before the District Court.

On June 28, one of the Lynford Street neighbors called Deputy Pease and told him that the Excursion was parked in front of 6834 Lynford Street. Deputy Pease was also

3

informed that Johnson was seen entering the premises. Task Force officers started arriving in the vicinity of 6834 Lynford Street at about 3:00 p.m. The Excursion was parked on the street. Surveillance was established.

Shortly before dark Camden County Sheriff's officer William Ruff and Deputy Marshal John Wilson, who were watching the rear of the house, observed a man come out, enter a silver Chevrolet Lumina and drive away. Deputy Pease testified that Deputy Wilson reported that "it's definitely not him." Sergeant Cella testified that Trooper Leone reported that the departing man was similar to Johnson but that he did not get enough of a look to determine one way or another whether it was he. Officer Ruff testified at the suppression hearing that the man leaving the house was not the person whose photograph he had been shown. He further testified that he had sufficient time to observe him and to make an arrest if he had thought the man was Johnson.

Surveillance continued. The Excursion remained parked on the street. As darkness fell the officers observed lights and an operating television inside the residence. Thereafter Deputy Pease communicated with an Assistant United States Attorney in New Jersey, informed her of the facts available to him and received authorization to make a warrantless search of the residence.

Because Johnson was believed to be armed and dangerous, a Philadelphia Police Department SWAT team was called to make the initial entry into the house. Shortly after 11 p.m. the SWAT officers knocked and announced their presence, received no answer

4

and forcibly entered. In two teams of three they searched the premises. They did not find Johnson. The search was a rapid one and took about five minutes to complete. Two members of the SWAT team, Officer Patrick Whalen and Officer Thomas DeMalto, testified that they saw a cooky sheet on the dining room floor with white material on it, which Officer Whalen believed to be crack. Neither mentioned this discovery in his post-search report. Officer DeMalto explained "all we do is go in there looking for a person . . . we don't do searches."

A Lieutenant Colarette of the SWAT team officially turned over the property to Sergeant Joseph Cella at the doorway of the house. At that moment other SWAT team members were still coming up from the basement and from the second floor. According to Sergeant Cella's testimony as soon as he was inside the house with Lieutenant Colarette he smelled crack and saw it from the doorway. He informed the Lieutenant what the substance on the dining room floor was. Led by Sergeant Cella the other surveillance officers entered the house as the SWAT team departed. Officer Whalen testified that he informed the Task Force officers that there was a substance he thought was crack cocaine on the dining room floor. The purpose of the Task Force was to double-check that no one was present and to secure the building, the front door of which had been broken open. Application was made for a search warrant.

At about 11:30 p.m., after the house had been secured, Johnson drove toward the property in a Chevrolet Lumina. After a chase he was arrested. The next morning more

5

than one kilogram of crack cocaine which had previously been observed in the residence and more than two kilograms of cocaine powder were recovered from the 6834 Lynford Street house upon the execution of the search warrant.

## Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and by virtue of Johnson's preservation in his plea of his right to appeal from the District Court's denial of his motion to suppress evidence.

The denial of a motion to suppress is reviewed for clear error with respect to the District Court's findings of fact. We exercise plenary review of the District Court's application of the law to the facts. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).

## Discussion

Defendant challenges the District Court's order denying his suppression motion on two grounds. First, he contends that the District Court erred when it determined that the warrantless entry into the 6834 Lynford Street premises was justified because the officers making the entry had reason to believe that defendant was within. Second, defendant contends that the District Court erred when it found that the crack cocaine was seized within the parameters of a permitted limited search.

It is undisputed that the law enforcement authorities possessed an arrest warrant

6

for defendant founded on probable cause. "And 'an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is a reason to believe the suspect is within.' Payton v. New York, 445 U.S. 573, 603 (1980)."

In its findings of fact the District Court described the events of June 28, 2001 essentially as set forth above. Pertinent to the challenge defendant now raises is the court's finding that "[t]wo of the officers who were surveying the back of the house saw an individual leave the back entrance of the residence, enter a vehicle, and drive away. The individual did not appear to the officers to be defendant."

Also pertinent to defendant's present challenge is the District Court's finding with respect to Officer Whalen, a member of the SWAT team who testified that during the initial sweep of the house he observed what he believed to be crack cocaine on the dining room floor. The District Court found that:

> "Officer Patrick Whalen, a member of the SWAT team, observed plates in plain view on the dining room floor. These plates contained a substance that he believed to be crack cocaine. A number of other officers observed the plates of cocaine at various points during the evening. The court finds that Officer Whalen's observations were the initial observations. The court also finds Officer Whalen's testimony to be clear and truthful. Officer Whalen informed the officers outside of the residence that he believed there was cocaine on the floor in the dining room. The officers outside of the residence then entered the residence but did not seize the crack cocaine or any other items at that time."

Defendant, in support of his two contentions challenges both of these findings. He argues that only one person, defendant, was reported to have entered the residence and

7

when a person who, according to one witness, had at least some resemblance to defendant, left the house, it was not reasonable for the law enforcement officers to continue to believe that defendant remained in the house. These are legitimate arguments, but the District Court's finding that the warrantless entry "was made pursuant to the reasonable belief that Defendant was inside of the residence at the time" is supported by substantial evidence and is not clearly erroneous.

There was ample evidence to support this finding. Neighbors had reported that defendant regularly drove an Excursion and on June 28 a neighbor reported that defendant drove up to the house in his Excursion, parked it on the street and entered the house. When a man left the house towards dusk one officer testified that the man was not Johnson, the person whose photograph he had been shown, and one officer stated that he could not tell one way or another who it was. The man drove off in a different vehicle and the Excursion remained parked on Lynford Street. Lights remained on in the house and television appeared to be playing. In these circumstances it was not clearly erroneous for the District Court to find that the officers had a reasonable belief that defendant was still inside the residence.

Defendant challenges the finding that Officer Whalen and other members of the SWAT team were the first persons to observe the crack cocaine on the dining room floor. Defendant contends that the crack cocaine was discovered in a subsequent impermissible search conducted by the surveillance team after the SWAT team search for defendant had

8

been completed. To support this argument defendant points to what he characterizes as inconsistencies in the testimony. For example he notes that Officer Whalen testified that he told some of the surveillance officers about the crack cocaine, but no officer testified to having received such a report. Sergeant Cella testified that he smelled and observed the crack cocaine as he entered the house. None of the SWAT team members mentioned the crack cocaine in their written reports.

Again these are legitimate arguments, but again the District Court's finding that Officer Whalen and other SWAT team members made the initial observations is not clearly erroneous. There is ample evidence to support it. There is, of course, Officer Whalen's unambiguous testimony. SWAT team member Officer DeMalto testified that he saw the crack cocaine during the course of the search for defendant. Because the plate of crack cocaine was in the middle of the dining room floor, it is inconceivable that the SWAT team members would not have seen it as they proceeded through the various rooms of the house. The testimony of Sergeant Cella and Officer Whalen are not inconsistent.

On the basis of this finding the District Court correctly concluded that "under these circumstances, Officer Whalen would have been entitled to seize the cocaine pursuant to the 'plain view' doctrine." See Horton v. California, 496 U.S. 128, 136-37(1990).[1] Of

---

[1] It might well be argued that the SWAT team entry into the house and the entry of the surveillance team five minutes later were part and parcel of the same entry in search of defendant and that, therefore, it made no difference whether the crack cocaine was first observed by the SWAT team or by the surveillance team. In view of the District Court's findings it is

course, no seizure was made at the time and ultimately the crack cocaine and the powdered cocaine were seized later pursuant to a valid search warrant.

## Conclusion

We conclude that the district court's findings were supported by the evidence and thus were not clearly erroneous, and that he correctly denied defendant's motion to suppress evidence. We will affirm the judgment of the district court.

TO THE CLERK OF THE COURT:
Kindly file the foregoing Opinion

/s/ Dickinson R. Debevoise
SENIOR DISTRICT COURT JUDGE

---

unnecessary to address that question.