NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3630
_____

UNITED STATES OF AMERICA

v.

AKEEM R. GUMBS,
                    Appellant
_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 3-11-cr-00021-001)
District Judge:  Honorable Curtis V. Gomez

ARGUED DECEMBER 10, 2013

BEFORE:  FISHER, COWEN, and NYGAARD, *Circuit Judges*

(Filed: March 28, 2014)

Gabriel J. Villegas, Esq. [Argued]
Office of Federal Public Defender
P.O. Box 1327, 51B Kongens Gade
St. Thomas, VI 00804
                    *Counsel for Appellant*

Everard E. Potter, I, Esq. [Argued]
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
St. Thomas, VI 00802-6924
                    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

PER CURIAM.

Appellant Akeem R. Gumbs was indicted on 31 counts related to the production

and possession of child pornography and the aggravated rape of his eight-year-old niece.

At a suppression hearing, Gumbs challenged the propriety of the search warrant, seeking

to exclude the fruits of the search (laptop computer, camera, etc.) from evidence.  The

District Court denied his motion.  The case went to trial in February of 2012 and Gumbs

was found guilty on all 31 counts.[1]  Gumbs was sentenced to 300 months' imprisonment

and a lifetime term of supervised release.  He has timely appealed, raising three issues, all

of which are meritless.[2]

I.

In March of 2011, Virgin Islands Police Officer Steven Payne was contacted by a

computer technician, "A.A."  A.A. reported that he found child pornography on a client's

computer, which appeared to depict an adult male having sexual intercourse and

engaging in other sexual acts with a minor female.  A.A. made a DVD copy of those

depictions and provided the DVD to Officer Payne.

---

[1] Due to some irregularities with the verdict form, the District Court later granted Gumbs
a judgment of acquittal on Counts 7, 29 and 30.  The Government did not object.

[2] The District Court had jurisdiction pursuant to 48 U.S.C. § 1612 and 18 U.S.C.
§ 3231.  We have jurisdiction pursuant to 28 U.S.C. 1291.

Through subsequent investigation, Officer Payne learned the identity of the minor female, a fourth-grade student at a local elementary school. He interviewed her and, later, her brother, who identified the adult appearing in the depictions as Gumbs.

Law enforcement officials thereafter obtained a copy of Gumbs's driver's license, and used the picture appearing on that license to corroborate the brother's identification of Gumbs. Thus, on March 19, 2011, law enforcement officials applied for and received an arrest warrant for Gumbs and a search warrant for his home. An attachment to the search warrant provided that the items to be seized from Gumbs's residence included:

1. Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

a. any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras and memory cards, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information

3

pertaining to the interest in child pornography; and/or possess child pornography, or information pertaining to an interest in child pornography . . .

(App. 57.)

Pursuant to those warrants, law enforcement officials arrested Gumbs and seized several items, including an empty camera box and jump drive, from his home.[3] They later found that the jump drive contained the same images that A.A. provided to Officer Payne. Subsequently, the Government charged Gumbs with five counts of production of child pornography, one count of possession of child pornography, and twenty-five counts of aggravated rape in the first degree. He was tried and convicted on twenty-eight of the thirty-one counts in the District Court of the Virgin Islands.[4]

II.

Before trial, Gumbs moved to suppress the physical evidence obtained from his home, arguing, in pertinent part, that the search warrant was an impermissible general warrant. He has renewed the argument on appeal.

"On appeal from the denial of a motion to suppress, we review a district court's factual findings for clear error, and we exercise *de novo* review over its application of the

---

[3] "Jump drives, also known as thumb drives or flash drives, are portable computer data storage devices." *United States v. Miles*, No. 10-279-2, 2010 WL 2991737, at *1 (E.D. Pa. July 29, 2010); *see also Stokes v. State*, No. A-11382, 2013 WL 2295424, at *1 (Alaska Ct. App. May 22, 2013) (noting that "a portable electronic storage device" is "popularly known as a computer thumb drive, flash drive, or jump drive").

[4] The District Court had jurisdiction pursuant to 48 U.S.C. § 1612 and 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. 1291.

4

law to those factual findings." *United States v. Pavulak*, 700 F.3d 651, 660 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2047 (2013). The Fourth Amendment of the United States Constitution prohibits the issuance of general warrants. *See United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002). Thus, a warrant "must describe the things to be seized with sufficient particularity and be no broader than the probable cause on which it is based." *Id.* (citation omitted) (internal quotation marks omitted).

Upon review of the search warrant at issue, we too reject Gumbs's argument. A general warrant lacks the particularity required by law; it "authorizes 'a general, exploratory rummaging in a person's belongings,'" *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002) [hereinafter *$92,422.57*] (citation omitted), and "vest[s] the executing officers with unbridled discretion to conduct an exploratory rummaging through" a defendant's belongings "in search of criminal evidence," *United States v. Tracey*, 597 F.3d 140, 153-54 (3d Cir. 2010) (citation omitted) (internal quotation marks omitted). "Examples of general warrants are those authorizing searches for and seizures of such vague categories of items as '"smuggled goods,"' '"obscene materials,"' '"books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings, and other instruments concerning the Communist Party of Texas,"' '"illegally obtained films,"' and '"stolen property."'" *Id.* at 154 (quoting *$92,422.57*, 307 F.3d at 149 (citations omitted)).

In *$92,422.57*, a case involving illegal money laundering, we considered whether a warrant was general that authorized a search for:

5

> 1. Receipts, invoices, lists of business associates, delivery schedules, ledgers, financial statements, cash receipt, disbursement, and sales journals, and correspondence.
>
> 2. Computers, computer peripherals, related instruction manuals and notes, and software in order to conduct an off-site search for electronic copies of the items listed above.

307 F.3d at 149.  "Although the scope of the warrant was certainly extensive," then-Judge Alito wrote for the majority that "the warrant was not general." *See id.*  He explained that the warrant, which "described in . . . inclusive generic terms what [wa]s to be seized . . . did not vest the executing officers with unbridled discretion to search for and seize whatever they wished.  It was indubitably broad, but it was not general." *Id.* (citations omitted) (internal quotation marks omitted).

Similarly, in *Tracey*, a case involving the distribution and possession of child pornography, we considered whether a warrant was general that authorized a search for:

> Any items, images, or visual depictions representing the possible exploitation of children including video tapes or photographs.
>
> COMPUTERS: Computer input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media.

597 F.3d at 143.  There, too, we concluded that the warrant was "did not authorize an exploratory rummaging" and therefore "was not a general warrant." *Id.*

Here, the warrant directs officers to seize "[i]mages of child pornography and files containing images of child pornography in any form[,] wherever it may be stored or found." (App. 57.)  It then, as in both *$92,422.57* and *Tracey*, sets forth a broad list of

6

computer-related devices that might store such images or files. We thus conclude, for the reasons expressed in *$92,422.57* and *Tracey*, that the search warrant, though broad, was not general.

Gumbs also argues that the search warrant was deficient because law enforcement officials, when applying for the search warrant, assumed without verifying that the address appearing on his driver's license was his residence. We find his argument to be unpersuasive. The address appearing on Gumbs's license was provided by Gumbs and maintained by the Virgin Islands Bureau of Motor Vehicles, a government agency. It was a reliable indicator of his residence, *see Frett-Smith v. Vanterpool*, No. 2000-89, 2006 WL 2403333, at *3 n.3 (D.V.I. Aug. 16, 2006), *aff'd*, 511 F.3d 396 (3d Cir. 2008), and law enforcement officials could rely on it without further corroboration. *See Wilson v. Russo*, 212 F.3d 781, 785 (3d Cir. 2000); *see also United States v. Campbell*, 603 F.3d 1218, 1232 (10th Cir. 2010) (suggesting that good faith exception to probable cause requirement would apply where police officers verified suspect's address by reference to driver's license).[5]

### III.

Gumbs also argues that the evidence adduced at trial was insufficient to sustain his conviction on Counts 1-6. He first raised this argument in a motion for acquittal pursuant

---

[5] The District Court suggested that police should, in the exercise of best practices, corroborate the address appearing on a suspect's driver's license. We agree. *See, e.g.*, *United States v. Johnson*, 86 F. App'x 533, 535 (3d Cir. 2004) (police officers obtained suspect's address from driver's license, and then confirmed with neighbors that suspect lived at that address). But law enforcement officials' failure to do so here does not render the search warrant constitutionally infirm.

7

to Federal Rule of Criminal Procedure 29, which was denied. "Our review of a district court's denial of a motion for acquittal based on sufficiency of the evidence is plenary." *United States v. Benoit*, 730 F.3d 280, 288 n.12 (3d Cir. 2013). But we nonetheless apply "a particularly deferential standard of review, viewing the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *Id.* (citation omitted) (internal quotation marks omitted).

Gumbs argues that the prosecution failed to meet its burden of proof with respect to Counts 1-6. Specifically, he faults the prosecution for failing to: (1) prove that either the depictions of child pornography produced at trial or the materials used to produce those depictions were transported in interstate commerce; or (2) produce the digital camera associated with the camera box seized from his home, which was allegedly used to create those depictions.

We have thoroughly reviewed the trial transcripts and conclude that the evidence produced at trial was sufficient to support the jury's verdict on Counts 1-6. Two items of note were seized from Gumbs's home: a camera box and a jump drive. At trial, a photograph of the camera box was introduced as Exhibit 8. Witness Elvin Evans testified that he recognized Exhibit 8 as a photograph of a gift that he had purchased for Gumbs at a local retail establishment. Later, the director of trademark and licensing for General Electric ("GE"), Kymberli Wilner, identified Exhibit 8 as packaging for a GE digital camera produced under model number GE A1250. Wilner further testified that the GE A1250 was and had always been exclusively manufactured in China. Finally, Homeland

8

Security Investigations Special Agent Dennis Carter, a computer forensic agent, testified that the images found on the seized jump drive were produced by a GE A1250.

Admittedly, this evidence was circumstantial. As Gumbs notes, the prosecution did not produce the GE A1250 that was actually used to create the depictions of child pornography produced at trial, the proverbial "smoking gun." Nonetheless, the sum of the evidence produced at trial, viewed in the light most favorable to the prosecution, was sufficient to establish that: (1) Gumbs owned a GE A1250, which was (2) manufactured overseas, (3) transported in interstate commerce before being sold in the United States Virgin Islands, and (4) ultimately used to produce the depictions of child pornography found on the seized jump drive. Accordingly, Gumbs's arguments lack merit.

IV.

Lastly, Gumbs argues that the District Court abused its discretion when it chose not to remove a juror who cried while viewing video of Gumbs engaged in sexual activity with the eight year-old victim. He contends that the District Court should have but failed to *voir dire* that juror, to ensure that she remained able to perform her duties. Because Gumbs did not request such *voir dire* during trial, we review the District Court's actions and inaction only for plain error. *See United States v. Bansal*, 663 F.3d 634, 645 (3d Cir. 2011), *cert. denied*, 132 S.Ct. 2700 (2012), and *cert. denied*, 133 S.Ct. 225 (2012).

"A criminal defendant is entitled to a determination of his or her guilt by an unbiased jury based solely upon the evidence properly admitted against him or her in court." *Gov't of the V.I. v. Dowling*, 814 F.2d 134, 137 (3d Cir. 1987). The District Court is best positioned to preserve such entitlements, as it can observe and interact with

9

the jury, and determine what, if any, investigation the circumstances demand. *See generally United States v. Kemp*, 500 F.3d 257, 301-02 (3d Cir. 2007) (discussing, in another context, the District Court's role in ensuring that the jury remains impartial).

Before the jury retired to deliberate, the District Court met with counsel to discuss the possibility of discharging the juror who had cried during trial. The District Court commented to counsel that "the images"—that is, video of Gumbs engaging in sexual activity with the eight year-old victim—"certainly might provoke some reaction," and that such emotion would not necessarily render the juror "unfair or impartial." (App. 64.) We agree. *Cf. State v. Lacey*, No. 99-2625-CR, 2001 WL 477411, at *4 (Wis. Ct. App. May 8, 2001) (per curiam) ("[J]urors sometimes cry in difficult cases and the simple fact that this particular juror cried during the victim testimony did not mean that she could not be impartial.")

The District Court considered the totality of the juror's conduct during trial, and concluded, based on that conduct, that further investigation was unnecessary. We will not now second guess the District Court's determination that the juror at issue was capable of performing her duties, or its implicit conclusion that *voir dire* was unnecessary.

V.

For the foregoing reasons, we will affirm Gumbs's conviction.